# Exhibit 18

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ERICSSON INC. and TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>    Plaintiffs,<br><br>        vs.<br><br>APPLE INC.,<br><br>    Defendant. | Civil Action No. 2:21-cv-376<br><br>Jury Trial Demanded |
| APPLE INC.,<br><br>    Counterclaim-Plaintiff,<br><br>        vs.<br><br>ERICSSON INC. and TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>    Counterclaim-Defendants. | |

**APPLE'S EMERGENCY MOTION FOR RELIEF AGAINST
ERICSSON'S ATTEMPT TO USE SECRET, *EX PARTE* ACTIONS
IN BOGOTA, COLOMBIA TO SUBVERT PROCEEDINGS IN THIS COURT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS .............................................................................................. 5

  A. The Parties' FRAND Claims in this Court ......................................................... 5

  B. Ericsson's Injunction Campaign .......................................................................... 6

  C. Ericsson's Colombia Injunction ........................................................................... 7

III. ARGUMENT ................................................................................................................... 8

  A. The *Unterweser* Factors Strongly Favor Granting Apple's Limited Requested Relief. ................................................................................................................... 8

CONCLUSION .............................................................................................................................. 15

I.     INTRODUCTION

Apple seeks the same relief that *Ericsson* sought from this Court just last year to address behavior that *Ericsson* previously derided—but now has engaged in itself.

When it brought this case in October 2021, Ericsson said that "[a] declaration from this Court will resolve the dispute between the parties." ECF 1 at ¶ 1. Both the Court and Apple embraced *Ericsson's* choice to resolve the parties' global FRAND dispute in *this Court*—and, indeed, Apple advocated and the Court ordered accelerating this case to trial in December. Facing that quickly approaching trial, Ericsson has unrelentingly sought to disrupt it by, among other acts, filing secret, *ex parte* injunction claims against Apple in courts around the world. Ericsson wants to put Apple to the choice of (1) incurring the substantial financial and reputational losses of having its products removed in markets outside the U.S. before this Court's trial or (2) capitulating to Ericsson's demands to avoid foreign SEP injunctions before this Court can adjudicate FRAND terms for those same patents. Ericsson's strategy to subvert and prevent the trial in this Court is plain: Ericsson knows that a December trial will expose its royalty demands as grossly excessive and directly contrary to FRAND.

The most immediate threat to the trial now arises from Bogota, Colombia, where Ericsson yesterday finally succeeded in having a court aid and abet its hold-up strategy—only after it knocked on the door of more than ten different courts there, all in secret, and all with absolutely no notice to Apple when filed—when a judge granted Ericsson's *ex parte* request for an injunction on an alleged 5G standard-essential patent *where no 5G networks are even in operation*. Ericsson sought a clandestine injunction even though that very same patent will be part of this Court's December FRAND determination. Ericsson's hypocrisy is manifest: Ericsson told this Court that its decision would be decisive, but in parallel has engaged in secret lawsuits in South America

trying to prevent this Court's trial from even happening. Apple brings this motion to protect this Court's jurisdiction over the December trial and ensure it actually happens.

When the shoe was on the other foot, Ericsson asked for similar relief from the Court. Less than seventeen months ago, Ericsson requested emergency relief from this Court in *Ericsson v. Samsung*, Case No. 2:20-cv-00380-JRG, after Samsung received an injunction through a secret, *ex parte* proceeding in China. Ericsson claimed at the time that the China injunction threatened this Court's jurisdiction "to resolve a FRAND dispute between Ericsson and Samsung," that this Court is "a natural forum to resolve this dispute" given Ericsson's presence in this District, and that allowing Samsung to further pursue or enforce its injunction in China "presents multiple *Unterweser* threats that clearly outweigh any international comity concerns."[1] Emergency Mot. for T.R.O. at 1, 3, 8, *Ericsson v. Samsung*, No. 2:20-cv-00380-JRG (E.D. Tex. Dec. 28, 2020), ECF No. 11. The Court agreed with Ericsson, granted the motion, and ordered Samsung to "[t]ake no action in the Chinese Action that would interfere with this Court's jurisdiction to determine whether Ericsson or Samsung have met or breached their FRAND obligations as they relate to both Ericsson and Samsung's 4G and 5G SEPs, or that would interfere with any other cause of action before this Court." *Ericsson Inc. v. Samsung Elecs. Co.*, No. 2:20-CV-00380-JRG, 2021 WL 89980, at *8 (E.D. Tex. Jan. 11, 2021).

Now Ericsson has embraced the conduct it previously derided and is itself posing a threat

---

[1]  The *Unterweser* factors refer to the test adopted by the Fifth Circuit for evaluating when an injunction against the prosecution of a foreign lawsuit may be appropriate. *See In re Unterweser Reederei, GmbH*, 428 F.2d 888, 890 (5th Cir. 1970)). These factors are discussed in more detail below. While Apple does not seek an injunction by this motion, application of the *Unterweser* factors is nonetheless appropriate. In *Ericsson Inc. v. Samsung Elecs. Co.*, No. 2:20-CV-00380-JRG, 2021 WL 89980 (E.D. Tex. Jan. 11, 2021), the Court indicates that the *Unterweser* factors would apply under circumstances similar to that now present, noting while "the test … relates to the issuance of an anti-suit injunction … it is nevertheless instructive." *Id.* at *4.

to the Court's jurisdiction over a FRAND dispute that should properly be resolved here, not in Bogota. Ericsson even went so far in Colombia as to ask the courts there to enter an anti-anti-suit injunction against this Court. Fortunately, nearly all of the Colombia courts seem to have rejected Ericsson's *ex parte* injunction and other requests at least in the first instance, although some cases have been appealed by Ericsson and are still pending a decision from the second-instance court.

But on April 28, 2022, one Colombia court in Bogota (Judge 43 of the District of Bogota) "admitted" a preliminary injunction of Apple's cellular products on a patent that Ericsson committed to license on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions and thus—by agreement of both parties—is at issue in this case before the Court. (Ex. [1], Decl. of Juan Pablo Cadena Sarmiento ¶ 10.) The Colombian proceedings occurred *ex parte*, with no opportunity for Apple to be heard. (*Id.*) Apple only learned of the proceedings on April 29, 2022, when Colombia counsel happened to find its publication on the notification listings of Court 43 of the Circuit of Bogota. (*Id.*) On May 2, 2022, Apple filed a reconsideration motion and subsidiary leave to appeal in Colombia seeking to stay any injunction with a counterbond, and specifically to stop the judge from ordering injunctive relief. (*Id.* ¶ 11.) On May 6, 2022, Ericsson posted the bond required by the judge to decide on ordering the injunction. (*Id.* ¶ 12.) On May 9, 2022, Ericsson filed a brief requesting the Court not to allow Apple to stay any injunction with a counterbond and insisted on the need to have its injunctive relief. And on July 6, 2022, the Court granted Ericsson's request for an injunction and entered orders to Apple Colombia S.A.S. prohibiting, *inter alia*, the import, sale, commercialization, and advertisement of allegedly infringing products. The Court also granted Ericsson an anti-anti-suit injunction directed at Apple Colombia S.A.S, which was published in the notification listings of Court 43 of the Circuit of Bogota on July 7, 2022.

The Colombian injunction threatens this Court's ability to adjudicate this case, including the determination of binding FRAND terms for a cross-license, because it will provide Ericsson with coercive leverage to demand non-FRAND terms from Apple. Apple has repeatedly committed that it will be bound by this Court's determination of FRAND terms and conditions. *E.g.*, ECF No. 73 at 1 ("Apple is committed to being bound by this Court's determination of FRAND terms for a global license between Apple and Ericsson."). And Ericsson confirmed on the record during the March 16, 2022 status conference that it also agrees that this Court should resolve the parties' licensing dispute on a global basis. March 16, 2022 Tr. at 15:8–11. Subsequently, when Ericsson commenced yet more foreign proceedings just recently in the United Kingdom, seeking a global FRAND adjudication there, Apple committed to the UK court that it would accept the FRAND terms finally determined by proceedings *here*, in the Eastern District.

Accordingly, to prevent immediate, irreparable injury to Apple and to protect the jurisdiction of this Court, Apple respectfully moves for an order that Ericsson (1) indemnify Apple from any fines, fees, penalties, and costs it incurs as a result of the Colombian injunction and (2) expand the terms of this Court's protective order to permit Apple to provide its Colombia counsel with copies of the Colombia filings Ericsson recently produced in this litigation together with the two Ericsson-Samsung licenses also produced.

To be clear, Apple's motion does *not* seek an "anti-injunction injunction" or any other relief against the Colombian court. Rather, Apple is asking this Court to order Ericsson to take financial responsibility for the consequences *here* of its action in *Colombia*—and hold Ericsson accountable *here* for its incessant attempts to subvert the Court's jurisdiction. If the Court orders that relief against Ericsson, hopefully Ericsson will reconsider its secret South American campaign and allow the Court's December trial to proceed without subversion.

As this Court has recognized under similar circumstances when Ericsson complained of the type of action it has taken in Colombia: "The issues present before this Court, the [foreign jurisdiction], the United States International Trade Commission, and elsewhere should be resolved on the merits and not based on unfair economic leverage gained through litigious gamesmanship. Equity demands no less." *Ericsson Inc. v. Samsung Elecs. Co., Ltd.*, 2:20-CV-00380-JRG, 2021 WL 89980, at *7 (E.D. Tex. Jan. 11, 2021).  So too here.

## II.   STATEMENT OF FACTS

### A.   The Parties' FRAND Claims in this Court

Apple filed a complaint in this Court on December 17, 2021, seeking, *inter alia*, "a binding judicial determination of FRAND terms for Apple to license Ericsson's [standard-essential patents or SEPs] globally, including by reference to the terms previously agreed upon by the parties in their 2015 license." Compl., *Ericsson Inc. v. Apple Inc.*, No. 2:21-cv-460 (E.D. Tex. Dec. 17, 2021), ECF No. 1.  Those claims were merged and consolidated with this proceeding.  ECF No. 46.  Apple filed its Answer and Counterclaims in this action on April 6, 2022, seeking the same relief as originally set forth in Civil Action No. 2:21-cv-460.  ECF No. 67, ¶ 10.

During a March 16, 2022 scheduling conference, both Apple and Ericsson expressed their understanding and agreement that this case would lead to a binding resolution of FRAND terms for a global cross-license.  March 16, 2022 Tr. at 13:19–14:2, 15:8–11.  Likewise, the Court committed that it was "prepared to contribute as much time and energy as necessary to move the [cases] forward in a reasonable fashion" and that its ability to do so depended on the cooperation of the parties.  *Id*. at 17:24–18:7.  The Court subsequently granted Apple's request to expedite resolution of this case by moving forward the trial date to December 5, 2022.  ECF No. 49. Notably, Ericsson has continued to advocate the importance of this case to the resolution of the

parties' dispute. On April 6, 2022, Ericsson filed a motion requesting that the Court order that Apple will "be bound" by the Court's decision, ECF No. 64, even though Apple has already repeatedly committed to that outcome. On May 2, 2022, the Court denied Ericsson's motion, explaining that "the issue of whether Ericsson's offer was FRAND is entirely separate from the global rate setting requested by Apple." ECF 89 at 4. Thus, the Court confirmed that "a separate count in this litigation explicitly asks the Court to declare FRAND terms and conditions for a license for Apple to Ericsson's global portfolio of cellular standard essential patents." *Id*.

### B. Ericsson's Injunction Campaign

The parties' 2015 Global Patent Licensing Agreement (GPLA) has recently expired. Notwithstanding Ericsson's alleged commitment to this Court's jurisdiction to resolve the parties' disputes, Ericsson has commenced dozens of lawsuits against Apple seeking injunctions or exclusion orders on SEPs and non-essential patents (NEPs) in at least six countries, including the United States, Belgium, Brazil, Germany, the Netherlands, and Colombia.[2]

In a filing with the ITC on January 17, 2022, Ericsson made the startling claim that it filed its ITC complaint "only after exhausting all other options to conclude a license with Apple on fair, reasonable, and non-discriminatory ('FRAND') terms." *Certain Mobile Telephones, Tablet*

---

[2] Ericsson's aim in asserting NEPs is the same as in asserting its SEPs—to coerce Apple into agreeing to above-FRAND royalties. Indeed, Ericsson's concedes in one of its NEP cases at the ITC that "[i]n instances where companies use Ericsson's patent technology, but after appropriate notice, negotiations, and opportunities, are unwilling to enter into a license agreement, Ericsson invests in patent enforcement litigation. In those patent enforcement proceedings, Ericsson asserts representative patents from the applicable portfolios." *Certain Mobile Phones, Tablet Computers, Smart Watches, Smart Speakers, and Digital Media Players, and Products Containing Same*, Inv. No. 337-TA-1300, Complaint ¶ 140 (Jan. 18, 2022). In a May 9, 2022 decision in the Netherlands denying Ericsson's motion for a preliminary injunction on a NEP, the court noted that "Ericsson also does not dispute that [the NEP patent-in-suit] will ultimately be included in the outcome of the negotiations leading to the termination of the global disputes between the parties, even though this patent is not part of Ericsson's SEP portfolio and therefore the U.S. proceedings to establish the FRAND terms do not directly concern this patent." (Ex. 2 at 12, ¶ 4.30).

*Computers with Cellular Connectivity, and Smart Watches with Cellular Connectivity, Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1299, Compl. at 2, (Jan. 17, 2022). That, of course, ignores that Apple had already filed claims to set global FRAND terms.

      C.      **Ericsson's Colombia Injunction**

In January 2022, Ericsson filed secret, *ex parte* preliminary injunction requests in more than a dozen Colombia cases—including two before the Superintendence of Industry and Commerce ("SIC"). Even after Apple and Ericsson agreed during the March 16, 2022 scheduling conference that the FRAND terms set by this Court will cover both parties' SEP portfolios, Ericsson continued to aggressively pursue those injunctive relief requests against Apple in secret.

Apple became aware only through review of the public dockets that, for most of the Colombia actions, the courts either denied Ericsson's request for injunctive relief or Ericsson withdrew the request once the proceeding was no longer *ex parte*. In denying Ericsson's request, one court described Ericsson's conduct as "coercion to negotiate more quickly[.]" (Ex. 1, Decl. of Juan Pablo Cadena Sarmiento ¶ 9.).

In one proceeding, however, Ericsson (finally) found a court to entertain its request and obtained the admission of requested preliminary injunctive relief and yesterday that court entered an official decree enjoining Apple Colombia from selling its phone products. The injunction was "admitted" on April 28, 2022, which Apple learned the following day when notice of the order was published on a docket and located by Apple's counsel. (*Id*. ¶ 10). On May 2, 2022, Apple filed a motion for reconsideration and a request to intervene, as Apple had no access even to the contents of Ericsson's request, including the scope of relief or patents asserted. (*Id*. ¶ 11). On May 9, 2022, Ericsson filed a response in which it opposed Apple's intervention. Ericsson's response confirmed that it had asserted a FRAND-encumbered patent declared essential to the 5G

standard. On July 7, 2022, the court issued two writs—the first granted Ericsson's requested injunctive relief while the second denied Apple's motion for reconsideration. This motion follows.

### III.  ARGUMENT

This case presents similar circumstances as the Court considered in *Ericsson v. Samsung*, where the Court granted Ericsson's request to enjoin Samsung from enforcing an injunction in China that Ericsson said would have inhibited its ability to pursue FRAND claims in the United States. 2021 WL 89980, at *8. There, Samsung was granted an *ex parte*, anti-suit injunction in China that enjoined Ericsson from pursuing any litigation in the United States (and elsewhere) regarding the 4G and 5G SEPs at issue before this Court. *Id.* at *2. Finding that the Chinese injunction would interfere with its jurisdiction to determine the issues before it—i.e., whether the parties' pre-suit negotiation breached or complied with their mutual FRAND obligations—the Court issued an injunction ordering Samsung to take no action in the Chinese litigation that would interfere with the Court's jurisdiction or deprive Ericsson of its rights to assert the full scope of their U.S. patent rights in the United States. *Id.* at *8. The Court further ordered Samsung to indemnify Ericsson for any penalties incurred as a result of Samsung's anti-suit injunction. *Id.* The reasoning of the *Samsung v. Ericsson* decision provides a useful roadmap here.

    **A.**    **The *Unterweser* Factors Strongly Favor Granting Apple's Limited Requested Relief.**

        **1.**    *The Colombian Injunction Will Frustrate This Court's Ability To Set Global FRAND Terms.*

"The public interest strongly supports this Court's continued exercise of its jurisdiction" where a foreign suit would impede the ability of "this Court to adjudicate legally cognizable claims under United States law [and thus] would frustrate this Court's compelling interest in ensuring that litigation within its legitimate jurisdiction proceed in this forum." *Ericsson*, 2021 WL 89980, at *4. An injunction against Apple in Colombia directly undermines this Court's jurisdiction to make

a binding determination of FRAND terms for a global license.

Ericsson's goal in pursuing these foreign injunctions is for Apple to abandon this litigation and capitulate to Ericsson's non-FRAND monetary demands, thereby denying the Court the opportunity to resolve the actual merits of the dispute and set binding global FRAND terms. This Court rejected similar attempts to circumvent its jurisdiction in *Ericsson v. Samsung*, holding that "[t]he issues present before this Court, the [foreign jurisdiction], the United States International Trade Commission, and elsewhere should be resolved on the merits and not based on unfair economic leverage gained through litigious gamesmanship. Equity demands no less." *Ericsson*, 2021 WL 89980, at *7. "The purpose of an Article III Court is to be an impartial adjudicator of cases and controversies within its lawfully conferred jurisdiction." *Id.* at *4 (citing to U.S. Const. art. III, § 2). As it was in *Ericsson v. Samsung*, Apple's narrow requested relief here would ensure the Court meets its "virtually unflagging obligation" to exercise its jurisdiction to resolve the disputes before it. *Id.* (internal quotation marks omitted).

Ericsson stressed in that litigation that "[t]he United States has a particular interest in this dispute," noting that "[s]tandardized cellular technology is critical to the United States economy, and this country has a strong interest in ensuring a fair and well-reasoned approach to SEP licensing.[3] A case between [Ericsson and Samsung] is immensely important to U.S. interests and warrants careful and neutral consideration by an Article III court." *Ericsson*, 2:20-cv-380, ECF No. 11 at 9. As was the case in *Ericsson v. Samsung*, it is equally important for the Court to retain

---

[3]  In contrast to the U.S., 5G networks are still not available for consumer use in Colombia. (Ex. 1, Sarmiento Decl. at ¶ 26). To the extent the Colombian court confirms that an injunction on a purportedly 5G essential method patent cannot be enforced until a 5G network is activated in Colombia, Apple will notify this Court of that confirmation.

its jurisdiction over the claims in this action between Apple and Ericsson.

The Court's decision in *Ericsson v. Samsung* was not an outlier. Other courts have also rejected attempts to impair domestic adjudication of the merits of licensing disputes through the threat of foreign injunctions. In *Huawei Techs., Co. v. Samsung Elecs. Co.*, No. 3:16-CV-02787-WHO, the court recognized Samsung faced the risk of significant worldwide harm as Huawei's foreign injunctions "would likely force it to accept Huawei's licensing terms, before any court has an opportunity to adjudicate the parties' breach of contract claims" and therefore "[t]he integrity of this action … will be lessened[.]" 2018 WL 1784065, at *10 (N.D. Cal. Apr. 13, 2018). Similarly, in *Microsoft Corp. v. Motorola, Inc.*, the court noted foreign injunctions "compromise[e] the court's ability to reach a just result in the case before it free of external pressure … to enter into a 'holdup' settlement before the litigation is complete." 696 F.3d 872, 886 (9th Cir. 2012).[4]

### 2.   *The Colombian Injunction Is Vexatious and Oppressive, and Will Result in Inequitable Hardship to Apple*

District courts in the Fifth Circuit have considered the following interrelated factors to determine whether a foreign proceeding is "vexatious or oppressive" and threatens the court's jurisdiction: (1) the inequitable hardship resulting from the foreign suit; (2) the foreign suit's ability to frustrate and delay the speedy and efficient determination of the cause; and (3) the extent to which the foreign suit is duplicative of the litigation in the United States. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 627 (5th Cir. 1996). Fifth Circuit law is unclear as to

---

[4]   *See also Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 20 (1st Cir. 2004) (enjoining foreign suit filed as "a blatant attempt to evade the rightful authority of the forum court"); *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp. 2d 998, 1000-01, 1008-09 (N.D. Cal. 2013) (enjoining patentee from enforcing ITC exclusion order because Realtek agreed to license under the court's-determined RAND terms so "any exclusion order or injunctive relief … is inconsistent with [the patent holder]'s RAND obligations").

whether, in the context of an anti-interference injunction, the litigation should be analyzed from the posture of the U.S. court or the foreign court. *Ericsson*, 2021 WL 89980, at *5. However, as detailed below, the Colombian injunction is vexatious and oppressive from the posture of both jurisdictions because its enforcement would create inequitable hardship on Apple in both the United States and in Colombia. The other two *Kaepa* factors are neutral.

The Colombian injunction would cause inequitable hardship for Apple because it would impede Apple's ability to get from this Court a determination of binding, global FRAND terms. The Court recognized in *Ericsson v. Samsung* that the purpose of these *ex parte* injunctions is to "unfairly" put the other party "in a weaker negotiating position when it comes to cross licensing its 4G and 5G SEPs[.]" *Ericsson*, 2021 WL 89980, at *10. The same is true here. To date, Ericsson has consistently demanded a global license agreement and made no demands to license Colombian patents or the single patent for which Ericsson has now obtained an injunction. ECF No. 1, ¶ 6.[5] In four Colombian courts, namely, Court 5, 17, 43 (2022-00017), and 49, Ericsson was refused the preliminary injunction due to various reasons, including (i) the lack of evidence of infringement and (ii) failure to prove the requirements for a preliminary injunction. At least one of the Colombian courts (Court 49 of the Circuit of Bogota) that considered and rejected Ericsson's request for an *ex parte* injunction, exposed Ericsson's attempt to use Colombian courts as tools for "coercion to negotiate more quickly." (Ex. 1, Sarmiento Decl. ¶ 9.)

The Colombian injunction would also cause inequitable hardship to Apple in the Colombian courts because Ericsson pursued the injunction in secret, at Ericsson's request. Apple was only able to question the "admission" of the preliminary injunction when its counsel in

---

[5] Ericsson has previously said that SEP injunctions are inconsistent with FRAND commitments. *See* ECF No. 67 at ¶¶ 55–61.

Colombia found the publication of the decision, notice of which was not specifically served on Apple Colombia. Plus, Court 43 then granted the preliminary injunction without even considering Apple Colombia's substantial arguments. This Court in *Ericsson v. Samsung* stressed that "[r]egardless of whether the procedure Samsung followed comported with Chinese law, Ericsson had none of the opportunities afforded to Samsung, and as a result would—but for this Court's preliminary injunction—be excluded from bringing causes of action in this forum where both parties have a significant presence." *Ericsson*, 2021 WL 89980, at *5. Apple faces the same harm here. Regardless of whether Ericsson has followed Colombian law to obtain its injunction, allowing enforcement of the Colombian injunction would deny Apple the same opportunities that Ericsson has to defend itself and secure its rights to pursue its legal claims by impeding the presentation of the case in this Court. Now that the Colombian court has decided to grant the injunction, Apple will begin accruing lost revenue and/or penalties due to alleged infringement of a single Ericsson declared 5G SEP in a country where no 5G networks are even in operation—without having had any meaningful right to dispute infringement, essentiality, or validity.

The current controversy before *this* Court will ultimately resolve the Colombian dispute and ensure that Ericsson is awarded FRAND compensation. Ericsson can, even absent an *ex parte* injunction, continue to litigate *inter partes* in Colombia and potentially obtain monetary damages. An *ex parte* Colombian injunction against Apple will not provide Ericsson with any benefit other than unfair leverage to use against Apple to abandon its legal rights to pursue FRAND terms and instead have to accept Ericsson's supra-FRAND rates.

Ericsson may attempt to argue that its Colombian injunction is justified because it is merely the lawful exercise of Ericsson's patent rights under Colombian law when Apple is unlicensed. But that argument ignores that Ericsson first approached *this* Court and invoked *its* jurisdiction to

resolve the parties' dispute on a global basis and that Ericsson later agreed to have the Court set binding FRAND terms pursuant to Apple's claims to a FRAND adjudication. Accordingly, Ericsson is not in the position of the typical patent holder enforcing its rights—instead, it chose this Court as the path to the global FRAND royalties that it claims to want. Indeed, in 2015 when the parties litigated and Apple pursued declaratory judgment claims of non-infringement against certain Ericsson patents, Ericsson claimed that, in contrast to a portfolio-wide claim before this Court, such patent-by-patent litigation offered "no … prospect of ending the parties' controversy on a human timescale" and, instead, merely "might give one party or the other … perhaps a bargaining chip that would marginally narrow the bid/ask spread between the parties in resumed portfolio negotiations." (Ex. _ at 15 (Defendants' MTD, *Apple Inc. v. Telefonaktiebolaget LM Ericsson*, No. 3:15-cv-00154-JD (N.D. Cal. Feb. 26, 2015), ECF 25).) Apple and, most importantly, the Court have now given Ericsson what it has long claimed to want. If Ericsson truly respects this Court and its authority to decide the parties' dispute—as it claims—then it should voluntarily and immediately stop trying to subvert the Court's December trial around the world.

### 3. *Providing Apple's Requested Relief Will Not Cause Prejudice Or Offend Other Equitable Principles*

Granting Apple the limited relief it seeks would not prejudice Ericsson or offend other equitable considerations. Ericsson has already agreed that this Court is the appropriate forum to resolve the parties' licensing disputes. Ericsson has asserted that "[a] declaration from this Court will resolve the dispute between the parties." ECF No. 1, ¶ 1. Therefore, Ericsson would not be prejudiced by having to indemnify Apple based on Ericsson's choice to pursue a remedy that will imperil the Court's ability to hold the December trial  Indeed, in *TCL* v. *Ericsson*, another case where the parties consented to have a global licensing rate set by a district court in the Central District of California, Ericsson consented to a binding injunction against pursuing infringement

actions in foreign jurisdictions and recognized that there was no need to engage in a global litigation campaign given that the California case would ultimately resolve the material issues. Order re Mot. at 11, *TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*, 8:14-cv-00341(C.D. Cal. June 29, 2015), ECF No. 279-1. The same is true here. And because Apple seeks only indemnification and not an injunction, Ericsson remains free to decide whether to pursue its injunction or any other relief in Colombia. Rather than stopping Ericsson from doing so, the limited relief Apple seeks will simply ensure that Ericsson is less able to benefit from the economic and logistical leverage gained from that relief to undermine this Court's jurisdiction.

### 4. *Apple's Requested Relief Does Not Offend International Comity.*

"No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum." *Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984). And "preserv[ing] the ability for litigation to proceed in parallel" does not offend international comity. *Ericsson*, 2021 WL 89980, at *7. Such a preservation is all that Apple seeks and this Court should grant it to Apple for four reasons.

*First*, as detailed above, the economic and logistical leverage the Colombian injunction creates undermines this Court's jurisdiction to determine FRAND terms. Ericsson's goal in pursuing the Colombia action (and dozens of other actions throughout the world) is to pressure Apple to abandon this litigation and capitulate to Ericsson's non-FRAND demand. This outcome would deny the Court the opportunity to resolve the actual merits of the FRAND dispute.

*Second*, the instant suit is a private contract dispute. By definition, a private contract dispute does not implicate international comity. *Kaepa*, 76 F.3d at 627. Ericsson has recognized "suits [that] concern private contract disputes … do not implicate international comity concerns." *Ericsson*, No. 2:20-cv-380-JRG, ECF 11 at 13. This Court agreed, holding that "[n]o international public policy or issue is implicated by this case: Ericsson and Samsung are private parties engaged

in a global commercial struggle." *Ericsson*, 2021 WL 89980, at *7 (citing *Kaepa*, 76 F.3d at 627).

**Third**, the requested relief would not deprive the foreign jurisdiction of any authority. Ericsson could still pursue its injunction, it would just have to bear the economic consequences to Apple of that decision. Alternatively, Ericsson can enforce its SEPs on the merits of the case and seek monetary damages. The relief requested is tailored not to "insert [the Court] into matters of [foreign] law or civil procedure, but to simply preserve [the Court's] jurisdiction over the cause of action properly before it." *Ericsson*, 2021 WL 89980, at *8.

Granting relief from the Protective Order so that Apple may provide its Colombia counsel with copies of Ericsson's Colombia filings, recently produced in this litigation but not served in Colombia, is also appropriate. The Court declined Ericsson's request to order Samsung to provide Ericsson with copies of filings in China, concluding that it "it is not for this Court to require Samsung to operate in a foreign jurisdiction as though it were here." *Ericsson*, 2021 WL 89990, at *8. But, here, such a step is necessary to preserve the Court's jurisdiction. As described above, Ericsson has pursued a whack-a-mole strategy of filing and dismissing actions in Colombia that has been rejected by all but one Colombian court.

**Fourth**, the requested relief would not unfairly deprive Ericsson of process in Colombia. As noted above, Ericsson could still pursue injunctive relief there but would have to bear the direct costs to Apple of doing so. Thus, international comity does not outweigh the interests of issuing Apple's requested relief to preserve the Court's jurisdiction over this action.

## CONCLUSION

For the reasons stated above, Apple respectfully requests that the Court grant this motion.

| | |
|---|---|
| DATED: July 8, 2022 | Respectfully submitted,<br><br> /s/ Melissa R. Smith<br>Melissa R. Smith<br>State Bar No. 24001351<br>melissa@gillamsmithlaw.com<br>GILLAM & SMITH, LLP<br>303 South Washington Avenue<br>Marshall, TX 75670<br>Telephone: 903-934-8450<br>Facsimile: 903-934-9257 |
| Ruffin Cordell<br>cordell@fr.com<br>State Bar No. 04820550<br>FISH & RICHARDSON P.C.<br>1000 Maine Ave SW, Suite 1000<br>Washington, DC 20024<br>Telephone: 202-783-5070<br>Facsimile: 202-783-2331<br><br>Benjamin C. Elacqua<br>State Bar No. 24055443<br>elacqua@fr.com<br>FISH & RICHARDSON P.C.<br>1221 McKinney Street, Suite 2800<br>Houston, TX 77010<br>Telephone: 713-654-5300<br>Facsimile: 713-652-0109<br><br>Betty Chen<br>State Bar No. 24056720<br>bchen@fr.com<br>FISH & RICHARDSON P.C.<br>500 Arguello Street, Suite 500<br>Redwood City, CA 94063<br>Telephone: 650-839-5070<br>Facsimile: 650-839-5071 | Joseph J. Mueller (*pro hac vice*)<br>Timothy D. Syrett (*pro hac vice*)<br>joseph.mueller@wilmerhale.com<br>timothy.syrett@wilmerhale.com<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>60 State Street<br>Boston, MA 02109<br>Telephone: 617-526-6000<br>Facsimile: 617-526-5000<br><br>Mark D. Selwyn (*pro hac vice*)<br>mark.selwyn@wilmerhale.com<br>WILMER CUTLER PICKERING<br>  HALE AND DORR LLP<br>2600 El Camino Real #400<br>Palo Alto, CA 94306<br>Telephone: 650-858-6000<br>Facsimile:  650-858-6100<br><br>***Attorneys for Apple Inc.*** |

- 17 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Plaintiffs' counsel of record were served with a true and correct copy of the foregoing document by electronic mail on July 8, 2022.

*/s/ Melissa R. Smith*

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendant met and conferred with counsel for Plaintiffs regarding the foregoing disputes as required by Local Rule CV-7(h). The Parties were unable to reach agreement as described above and are at an impasse.  Plaintiffs opposes this motion.

*/s/ Melissa R. Smith*