# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| TELEFONAKTIEBOLAGET LM ERICSSON<br><br>Plaintiff,<br><br>v.<br><br>LENOVO (UNITED STATES), INC., LENOVO (SHANGHAI) ELECTRONICS TECHNOLOGY CO. LTD., LENOVO BEIJING, LTD., LENOVO GROUP, LTD., MOTOROLA (WUHAN) MOBILITY TECHNOLOGIES COMMUNICATION CO., LTD., AND MOTOROLA MOBILITY, LLC,<br><br>Defendants. | C.A. No. 5:23-cv-00569<br><br>FILED UNDER SEAL |
| LENOVO (UNITED STATES), INC., AND MOTOROLA MOBILITY LLC,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>TELEFONAKTIEBOLAGET LM ERICSSON, ERICSSON AB, AND ERICSSON INC.<br><br>Counterclaim-Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND DEFENDANTS' MOTION FOR AN ANTISUIT INJUNCTION RELATED TO ERICSSON'S FOREIGN INJUNCTIONS AGAINST LENOVO PRODUCT SALES**

## TABLE OF CONTENTS

|      |                                                                                           | Page |
|------|-------------------------------------------------------------------------------------------|------|
| I.   | Lenovo Has Met The Threshold Requirements For An ASI (Same Issues And Parties)            | 3    |
| II.  | The Relevant Factors Favor Anti-Suit Relief Here                                          | 4    |
| III. | Lenovo Will Be Irreparably Harmed Without an ASI                                          | 10   |
| IV.  | Conclusion                                                                                | 10   |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014) ................................................................................................5

*Ericsson Inc. v. Samsung Elecs. Co.*,
  2021 WL 89980 (E.D. Tex. Jan. 11, 2021) ................................................................................9

*Ericsson v. Apple*,
  2022 WL 19403865 (E.D. Tex. July 28, 2022) ...............................................................1, 5, 10

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
  12 F.4th 476 (5th Cir. 2021) .................................................................................................6, 7

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
  2018 WL 1784065 (N. D. Cal. Apr. 13, 2018) ................................................................ passim

*Lenovo (United States) Inc. v. IPCom GmbH & Co., KG*,
  2022 WL 2644096 (N.D. Cal. July 8, 2022) ...........................................................................10

*Microsoft Corp. v. Motorola, Inc.*,
  696 F.3d 872 (9th Cir. 2012) ....................................................................................1, 3, 5, 10

*Microsoft Corp. v. Motorola, Inc.*,
  871 F. Supp. 2d 1089 (W.D. Wash. 2012) .......................................................................2, 4, 9

*Motorola Credit Corp. v. Uzan*,
  2003 WL 56998 (S.D.N.Y. Jan. 7, 2003) .................................................................................4

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
  369 F.3d 645 (2d Cir. 2004) .....................................................................................................3

*TQ Delta, LLC v. ZyXEL Communs. Inc.*,
  2018 U.S. Dist. LEXIS 98228 (D. Del. June 12, 2018) ...........................................................6

*Voda v. Cordis Corp.*,
  476 F.3d 887 (Fed. Cir. 2007) ................................................................................................10

ALL EMPHASES ADDED UNLESS OTHERWISE NOTED

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 22 | Excerpts from Global Patent License Agreement, January 4, 2011 [CONFIDENTIAL] |
| 23 | Letter from J. Mulgrew to C. Petersson, November 3, 2023 |
| 24 | Letter from C. Petersson to J. Mulgrew, November 15, 2023 |
| 25 | Lenovo's Public Interest Statement, *In the Matter of Certain Cellular Base Station Communication Equipment, Components Thereof, and Product Containing Same*, Inv. No. 337-3713, December 15, 2023 |
| 26 | Letter from J. Mulgrew to C. Petersson, November 28, 2023 |
| 27 | Documents describing Ericsson's licensees [CONFIDENTIAL] |
| 28 | Lenovo's Proposed Arbitration Agreement, November 28, 2023 |

An anti-suit injunction ("ASI") against enforcement of Ericsson's expedited and *ex parte* injunctions in Brazil and Colombia is appropriate for the same reasons other courts have issued ASIs: the foreign patent injunctions on Ericsson's FRAND-encumbered patents threaten this Court's jurisdiction to decide the threshold FRAND contract claims before it. D.E. 36 ("Mot.") 17–19. *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012) ("*Microsoft II*") and *Huawei Techs., Co. v. Samsung Elecs. Co.*, 2018 WL 1784065 (N. D. Cal. Apr. 13, 2018), confirm that the contract issues Ericsson *chose* to put before this Court in this first-filed action would be "dispositive" of the foreign patent injunctions under the ASI standard. Thus, consistent with this precedent, a narrowly tailored ASI is appropriate while the contract issues encumbering the patents are decided. *See id*. Lenovo needs this relief urgently: when the Colombian courts re-open on January 14 and 20, 2024, Ericsson can seek anti-anti-suit injunctions to prevent the very relief Lenovo is seeking from this court. Mot., Ex. 3 ¶¶ 21–22. Ericsson has done this before. *Ericsson v. Apple*, 2022 WL 19403865, *1 (E.D. Tex. July 28, 2022). Ericsson raises no meritorious response for its continued enforcement of these foreign injunctions.

*First*, Ericsson suggests that the cases on which Lenovo relies are somehow no longer good law because the law has "evolved." D.E. 44 ("Opp.") 21–22. It has not. The reasoning in *Microsoft* and *Huawei* is squarely on point and has never been overruled or otherwise limited. In the sole case Ericsson relies on for its "evolving law" argument, *Ericsson v. Apple*, no ASI was even sought, let alone addressed in the ruling. No case supports Ericsson's position.

*Second*, Ericsson argues no ASI is appropriate because the identical parties to the foreign injunction are not parties here. But identical parties are not necessary, and here, the Lenovo entities in this case are the same ones Ericsson alleges are responsible for negotiating and entering a binding worldwide FRAND license on behalf of all Lenovo affiliates. D.E. 1 ¶¶ 18–19. Lenovo

1

agrees. D.E. 29 ¶ 38. Nothing more is necessary to meet the threshold test for an ASI.

*Third*, Ericsson argues that "Lenovo has made no unconditional commitments ensuring that this action will resolve the foreign infringement actions." Opp. 19. That is factually wrong—Lenovo has sought binding rate setting both in this Court and the UK. Regardless, Ericsson also misstates the legal requirements. An "unconditional commitment" is not the test for whether the U.S. action will be dispositive of a foreign action for purposes of an ASI. Here, Ericsson brought a breach of FRAND contract claim in this court, which is the same claim on which both *Huawei* and *Motorola* relied to find that the U.S. action would be dispositive of the foreign injunction actions. *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1098-1100 (W.D. Wash. 2012) ("*Microsoft I*"); *Huawei*, 2018 WL 1784065, at *6–9. Contrary to Ericsson's suggestion, no case requires that Lenovo must unconditionally agree to accept Ericsson's offer if it is found to be FRAND as a condition for an ASI. Indeed, as Ericsson knows, it is well established that "the issue of whether Ericsson's offer was FRAND is entirely separate from the global rate setting requested by" Lenovo. Ex. 15 at 4. Lenovo has expressly sought and agreed to be bound by the latter.

*Fourth*, Ericsson misstates the relief sought by Lenovo in arguing that there is an affront to comity. Lenovo does not seek to enjoin foreign patent actions. The limited and narrowly tailored relief it seeks is to temporarily enjoin enforcement of foreign patent injunctions against sales of Lenovo products while the parties litigate the rate for a cross license. There is no affront to comity for such limited relief for the same reasons explained in *Microsoft* and *Huawei*.

*Finally*, the balance of Ericsson's arguments re-hashes its position why it thinks it acts reasonably and Lenovo does not with multiple mischaracterizations of the record. These issues, to the extent they are relevant at all, go to the parties' breach of FRAND counts and not the ASI. The flaws in Ericsson's story—omitting that Lenovo's Motorola subsidiary has a cross license with

2

Ericsson for at least 4G products; complaining about 10 years of negotiation when Lenovo's 5G products have only been on the market for three years; relying on undisclosed licenses to prove its offer was FRAND—only reflect that Ericsson is not serious about resolving the parties' contract dispute and instead hopes to bludgeon settlement with unnecessary enforcement of foreign injunctions it could not hope to obtain in the United States.

I.     **Lenovo Has Met The Threshold Requirements For An ASI (Same Issues And Parties)**

***This case is dispositive of the foreign actions.*** Ericsson's claim that "[t]he only way for Lenovo to dispose of foreign patent infringement actions is to sign a license" is contrary to the law. Opp. 17. In *Microsoft*, the issues were "functionally the same" because the patentee's worldwide licensing offer included foreign patents and the patentee contracted to license its patents on FRAND terms on a worldwide basis. *Microsoft II*, 696 F.3d at 883. In *Huawei*, the court reached the same conclusion. 2018 WL 1784065, at *6–9. Those are precisely the circumstances here. Opp., Ex. 5 (Ericsson offering worldwide license to cellular SEPs); D.E. 1 ¶¶ 205, 214 (Ericsson alleging it made FRAND offer for global cross-license). Regardless, Lenovo has also asked the Court to set FRAND terms for a global cross-license between the parties, which would necessarily include the declared 5G SEPs at issue in the foreign proceedings. D.E. 29, Countercl. 3.

***The parties are substantially the same***. Ericsson claims that Lenovo must show there are "identical parties or a corporate parent" party to meet the "substantially the same" standard. Opp. 20.[1]  But "[p]erfect identity of the parties is not required" and "it suffices that the parties be

---

[1] *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004), on which Ericsson relies, did not require identical parties or the naming of the corporate parent. Rather, the court relied on how the plaintiff had treated the defendants (e.g., as affiliates) to find that they were "sufficiently similar." *Id.* at 652. The court can do the same here, based on how Ericsson has treated Lenovo US as the entity responsible for negotiating a global cross-license for all affiliates, as explained herein.

affiliated in such a way that their interests coincide." *Microsoft I*, 871 F. Supp. 2d at 1098. Lenovo meets this requirement. Ericsson's foreign injunctions against the Brazilian and Colombian entities, and Lenovo's customers, ███████████████████████████████████ ███████████████████████████ Mot., Ex. 1 ¶¶ 10-11. Moreover, Ericsson has refused to negotiate on a country-by-country basis, Mot., Ex. 21, and its own complaint makes clear that Ericsson believes Lenovo (United States) Inc. can negotiate a global resolution to this dispute. D.E. 1 ¶¶ 18–19. Ericsson brought its FRAND claims against *only* Lenovo (United States), Inc., *id.* ¶¶ 190-222, and alleged that it was obligated to license Lenovo (United States) Inc., "who, along with its *affiliated companies that it negotiates on behalf of,* provides" 5G equipment. *Id.* ¶¶ 214-15. In response, Lenovo (United States), Inc. and Motorola Mobility LLC, the two parties who brought this motion, admitted that they were "negotiating in good faith on behalf of its related companies with Ericsson LM for a global patent cross-license." D.E. 29 ¶ 215. Those related companies include the Brazilian and Colombian affiliates subject to Ericsson's injunctions. That more than suffices to establish the parties are "substantially the same." *Motorola Credit Corp. v. Uzan*, 2003 WL 56998, at *2 (S.D.N.Y. Jan. 7, 2003) (same party requirement met where entities in foreign action were affiliates of entity in U.S. action).

II. **The Relevant Factors Favor Anti-Suit Relief Here**

Each of the ASI factors are met here, and Ericsson's contrary arguments lack merit.

***Ericsson's enforcement of foreign injunctions threatens the Court's jurisdiction and U.S. policy.*** *Microsoft* and *Huawei* are clear that enforcing foreign injunctions on FRAND-encumbered patents while contract claims related to those patents are pending in the US threatens US jurisdiction and is contrary to U.S. policy. *Microsoft I*, 871 F. Supp. 2d at 1100; *Huawei,* 2018 WL 1784065, at *10. Ericsson asks the court to disregard this precedent based on subsequent "developments," i.e., the decision in *Ericsson v. Apple*. Opp. 21-23. Far from being "on-point,"

4

*Apple v. Ericsson* does not address ASIs *at all* and does not mention *Microsoft* or *Huawei*. Indeed, "Apple's Motion expressly disavow[ed] a request for injunctive relief" (a fact Ericsson claims is "not relevant here."). *Ericsson*, 2022 WL 19403865, at *4; Opp. 23 n.5. Instead of an ASI, Apple sought an order requiring indemnification by Ericsson for its Colombia injunctions, which the court concluded was "not a remedy consistent" with irreparable harm. *Ericsson*, 2022 WL 19403865, at *4. The court further explained that Apple's motion was "bereft of any showing" of irreparable harm because Colombia accounted for less than one percent of Apple's worldwide sales, and Apple's primary complaint was that the Colombian injunctions would impose "pressure[] to negotiate" with Ericsson. *Id.* at *4-5. That is far different from this case: Ericsson's injunctions target markets that account for ▇ of Lenovo's smartphone sales, Mot., Ex. 1, and are specifically intended to "force [Lenovo] to accept [Ericsson's] licensing terms, before any court has an opportunity to adjudicate the parties' breach of contract claims." *Huawei*, 2018 WL 1784065, at *10. Thus, unlike in *Ericsson v. Apple*, "[t]he integrity of this action[] will be lessened without an anti-suit injunction." *Id.*

Ericsson also mischaracterizes the law in arguing that nothing in its FRAND contract "restric[ts its] ability … to obtain injunctive relief." Opp. 21. While *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014), held that there was no "*per se* rule that injunctions are unavailable for SEPs," the court explained that "FRAND commitments are certainly criteria relevant to its entitlement to an injunction." *Id.* at 1331-32. *Microsoft* and *Huawei* recognized the same. *Microsoft II,* 696 F.3d at 884–85; *Huawei*, 2018 WL 1784065, at *8. Neither the Brazilian nor Colombian courts addressed whether Ericsson's offer was FRAND, and Ericsson has squarely placed that issue (whether it made a FRAND offer) before this court. It should not be permitted to

5

usurp the court's ability to decide that issue with foreign injunctions.[2]

*The equitable considerations favor an ASI.* Ericsson's recitation of the "equities" omits crucial facts that confirm this factor favors an ASI. *First*, Ericsson claims "Lenovo has never signed a license with Ericsson or paid a penny in royalties." Opp. 24. But Motorola Mobility, whose smartphones Ericsson is seeking to enjoin, has a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇ Mot., Ex. 22. Motorola granted Lenovo a sub-license under that agreement. Ericsson fails to acknowledge this license, let alone justify a demand for millions of dollars in royalties when the existing license is ▇▇▇▇▇▇.

*Second*, Ericsson insists that its 1% rack rate offer of 1% of net sales is FRAND. Ericsson points to its "announcement" of its offer, but an announcement does not render an offer FRAND, especially since there is no indication Ericsson accounted for Lenovo's existing, ▇▇▇▇▇ cross license in that public "rack rate" offer. Several "larger mobile device manufacturers," e.g., Apple, Samsung, and Huawei, "received ***significantly more favorable*** licensing agreements" than Ericsson's purported FRAND offer. *HTC Corp. v. Telefonaktiebolaget LM Ericsson,* 12 F.4th 476, 482 (5th Cir. 2021). Ericsson also relies on an expert's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp., Ex. 3. That does not comply with Rule 26 and should be disregarded. ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[2] Ericsson also relies on *TQ Delta*, but in that case, the court denied the ASI because the plaintiff failed to argue that the issues were the same between the US and foreign actions. *TQ Delta, LLC v. ZyXEL Communs. Inc.*, 2018 U.S. Dist. LEXIS 98228, *8 (D. Del. June 12, 2018).

[3] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 27.

███████████████████████████████████████████████████████████.

Ericsson's reliance on *HTC v. Ericsson* fails for similar reasons. Lenovo was not a party to that case (thus, it has no preclusive effect), and while HTC was not "similarly situated" to the larger device manufacturers who received better terms than Ericsson offered, Lenovo is. *HTC,* 12 F. 4th at 488. Ericsson's request that the Court pre-judge its offer based on an incomplete record is just another attempt to deny Lenovo the opportunity to defend itself and should be rejected.

*Third*, Ericsson claims that Lenovo's counteroffer of $0.23/unit is unsupported, but that is simply not the case. Lenovo's royalty is based on two decisions from the UK (*Optis v. Apple* and *Interdigital v. Lenovo*). Relying on the fulsome analyses in those cases, which was based on the presentation of substantial evidence at trial, Lenovo determined the total royalty for all cellular declared essential patents owned by *any* patent holder in both cases, took the average of those amounts ($5.22), and applied Ericsson's estimated share of cellular essential patents (4.45%) to arrive at $0.23/unit. Ex. 23. In response, Ericsson insisted that its offer was the only proper one and pointed to a self-serving (and unsupported) assertion that its share of cellular essential patents was larger than 4.45%. Ex. 24.

*Fourth*, Ericsson incorrectly contends Lenovo "ignored" Ericsson's arbitration offer. Opp. 24. Lenovo provided Ericsson with a detailed arbitration proposal that would resolve all pending disputes between the parties, only for Ericsson to reject it. Ex. 28. Lenovo believed global resolution (e.g., to include more than just SEPs) because Ericsson has also sued Lenovo on non-essential patents in this Court and the ITC. Lenovo's attempt to achieve a global resolution does not weigh against the relief it seeks here.

*Fifth*, Ericsson claims that Lenovo has not committed to accept Ericsson's offer if it is found FRAND in this proceeding. Mot. 24. But this conflates a FRAND offer with FRAND terms

7

and conditions for a cross-license—and Lenovo has expressly agreed to accept the latter (███████████████████████).[4] Ex. 20 at 2; D.E. 29, Countercl. III; Mot., Ex. 5 ¶67; Ex. 26. Indeed, in *Ericsson v. Apple*, the court saw "*no justification* for requiring Apple to accept the terms of Ericsson's October 2021 offer if it is determined to be FRAND. This is doubly so because a separate count in this litigation explicitly asks the Court to declare FRAND terms and conditions for a license for Apple to Ericsson's global portfolio of cellular standard essential patents." Opp., Ex. 15 at 4 (emphasis added). The same applies here.

*Finally*, Lenovo has not sought preliminary injunctive relief for Ericsson's infringement *anywhere*. Motorola's ITC complaint expressly pleaded that "[t]o the extent Respondents [Ericsson] are willing to withdraw all of their lawsuits and legal actions, Motorola is willing to do the same." Ex. 25. And Lenovo is not seeking to enjoin Ericsson from pursuing its own ITC claims with this motion. Lenovo's UK action likewise only seeks a "FRAND injunction," which would only become effective after a trial on the merits. Opp., Ex. 13 ¶56A.

**Ericsson's foreign injunctions are vexatious.** Although Ericsson suggests that Lenovo had a fair opportunity to participate in the Brazilian and Colombian proceedings before the injunction issued, Opp. Ex. 1 ¶ 29, it does not seriously argue that its foreign injunctions impose "inequitable hardship" on Lenovo. Opp. 25. To be clear, Lenovo and its customers had no opportunity to defend themselves in Colombia before any injunctions issued and now risk being subjected to criminal penalties and fines while appeals are decided. Mot., Ex. 3 ¶ 13. As for Brazil, Ericsson claims that Lenovo's preliminary response (which it had days to prepare) to Ericsson's detailed filings and expert declarations were sufficient, Opp., Ex. 1 ¶ 29. Yet in this case, Ericsson

---

[4] Ericsson's correspondence recognizes the same, as it offered arbitration to decide "any disputed licensing terms for the cellular standard essential patent cross-license" separate from its claim in this case regarding whether its offer was FRAND. Opp., Ex. 5.

has sought *52 days* to respond to Lenovo's counterclaims because it "require[s] additional time to investigate and analyze these matters." *See* D.E. 42 (seeking 30-day extension). If Ericsson cannot sufficiently investigate its response to *allegations* that carry no risk of an immediate injunction in less than 52 days (almost double the time Lenovo had to oppose Ericsson's injunction), Lenovo plainly had an inadequate opportunity to respond in Brazil.

Ericsson's argument that its foreign injunctions will not frustrate this case is irreconcilable with the reasoning in *Microsoft* and *Huawei* granting ASIs. Ericsson's argument that its later-filed foreign proceedings will also address FRAND issues—and thus result in duplicitous proceedings in multiple fora—only supports granting an ASI. Opp. Ex. 1 ¶ 11–12; Ex. 2 ¶ 10. It also conflicts with its claim that the foreign proceedings involve only issues that are not before this court. Opp. 25-26. Simply put, the timing and nature of Ericsson's foreign actions on SEPs raise heightened concerns of forum shopping and vexatious litigation. *Microsoft I,* 871 F. Supp. 2d. at 1100.

**Any impact on comity is tolerable.** Lenovo is not seeking to "strip" foreign courts of the ability to adjudicate infringement, as Ericsson claims. Opp. 1. Lenovo is seeking limited relief that prevents *Ericsson* from enforcing the preliminary injunctions it has obtained already, or seeking more of the same on its SEPs. Lenovo is not seeking to enjoin the underlying foreign infringement *proceedings*. Mot. 21–22. Thus, the relief that Lenovo seeks is entirely consistent with the principle that "courts will protect their authority against foreign interference but in a way that will allow parallel proceedings to go forward." Opp. 27. The circumstances here are the opposite of *Ericsson Inc. v. Samsung Elecs. Co.*, when Ericsson filed a case in Texas with no knowledge of Samsung's secret, first-filed Chinese action. 2021 WL 89980, at *10–11 (E.D. Tex. Jan. 11, 2021). Here, by contrast, Ericsson filed this case first and then sought secret foreign injunctions to disrupt these proceedings. *IPCom* is also inapposite because that case was dismissed on jurisdictional

grounds and the court did not address the ASI merits. *Lenovo (United States) Inc. v. IPCom GmbH & Co., KG,* 2022 WL 2644096, at *1 (N.D. Cal. July 8, 2022). Finally, *Voda v. Cordis Corp.* is even further afield, as that case addresses whether a U.S. district court had supplemental jurisdiction to hear *the merits* of foreign patent infringement claims, not whether an ASI should issue. *See* 476 F.3d 887, 891 (Fed. Cir. 2007). The decision to grant an ASI does not "turn[] upon the merits of the foreign suit under foreign law." *Microsoft II,* 696 F.3d at 888.

### III. Lenovo Will Be Irreparably Harmed Without an ASI

Each of the relevant factors favors entry of a TRO and PI. *First*, Ericsson agrees that likelihood of success is based on whether Lenovo is entitled to an ASI. Opp. 29. Lenovo has more than established an ASI should issue here. *Second*, Ericsson's sole response on irreparable harm is that Lenovo should have sought relief sooner, *id.* 29-30, which ignores Lenovo's efforts to negotiate a solution directly with Ericsson before asking this Court to issue extraordinary relief. Mot., Ex. 12; Ex. 20. With the Colombian courts re-opening soon, Lenovo is left with no choice but to ask this Court to intervene before Ericsson seeks an anti-anti-suit injunction to prevent this Court from ruling on Lenovo's motion. *Ericsson*, 2022 WL 19403865, at *1. *Third*, Ericsson asks the Court to ignore Lenovo's hardship because Lenovo did not accept Ericsson's supra-FRAND demand, which again pre-supposes the outcome of this case. Ericsson also points to Lenovo's responsive actions, which bear no resemblance to the expedited preliminary injunctive relief Ericsson has obtained against Lenovo, as explained above. *Finally*, there is no harm to the public because the narrow relief Lenovo seeks does not limit Ericsson's ability to seek adjudications of infringement and damages anywhere in the world.

### IV. Conclusion

For the foregoing reasons, and those in its opening brief, Lenovo respectfully requests that the Court enter a TRO and ASI.

Dated: January 5, 2023

Respectfully submitted,

*/s/ Raymond M. Bennett*

Raymond M. Bennett
N.C. State Bar No. 36341
**WOMBLE BOND DICKINSON (US) LLP**
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-2100
Facsimile: (919) 755-2150
Email: ray.bennett@wbd-us.com

Jacob S. Wharton
N.C. State Bar No. 37421
**WOMBLE BOND DICKINSON (US) LLP**
One West 4th St.
Winston-Salem, North Carolina 27601
Telephone: 919-747-6609
Email: Jacob.Wharton@wbd-us.com

Greg S. Arovas, P.C.
Leslie M. Schmidt, P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email greg.arovas@kirkland.com
Email: leslie.schmidt@kirkland.com
*Special Appearance Pursuant to L.R. 83.1*

Edward C. Donovan, P.C.
F. Christopher Mizzo, P.C.
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
Email: edonovan@kirkland.com
Email: chris.mizzo@kirkland.com
*Special Appearance Pursuant to L.R. 83.1
Forthcoming*

*Counsel for Lenovo (United States), Inc. and Motorola Mobility LLC*