# Exhibit 25

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C. 20436

**In the Matter of**

**CERTAIN CELLULAR BASE STATION COMMUNICATION EQUIPMENT, COMPONENTS THEREOF, AND PRODUCTS CONTAINING SAME**

Investigation No. 337-TA-____

**COMPLAINANT'S INITIAL STATEMENT REGARDING THE PUBLIC INTEREST**

Complainant Motorola Mobility LLC ("Motorola" or "Complainant"), hereby submits this Statement Regarding the Public Interest in compliance with Commission Rule 210.8, 19 C.F.R. § 210.8. As discussed more fully below, Motorola submits that issuing the relief requested, including a permanent limited exclusion order and a cease and desist order against Respondents Ericsson AB, Telefonaktiebolaget LM Ericsson, and Ericsson Inc. (collectively, "Respondents"),[1] will not have any undue adverse impact on public health, safety, or welfare conditions in the United States, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, or United States consumers.

Respondents recently filed a series of lawsuits and legal actions in the United States and around the world. Respondents' global actions demonstrate that they do not want a Court setting fair, reasonable, and non-discriminatory ("FRAND") terms for their patents. By way of such actions, Respondents are improperly using their purported standard essential patents ("SEPs") and non-standard essential patents ("NEPs") to seek injunctive relief to coerce Motorola to take an unfair, unreasonable, and discriminatory license to their purported SEPs. To the extent Respondents are willing to withdraw all of their lawsuits and legal actions,

---

[1] As noted elsewhere in this Initial Statement Regarding the Public Interest, "Respondents" refers to one or more of Ericsson AB, Telefonaktiebolaget LM Ericsson, and Ericsson Inc.

Motorola is willing to do the same. However, if Respondents are unwilling to engage in good faith negotiations, and further if Respondents are unwilling to allow any court the opportunity to determine FRAND terms efficiently and justly, Motorola is forced to respond to Respondents' infringement of Motorola's patents.

**I.     Use of articles potentially subject to remedial orders in the United States**

The products subject to remedial orders are cellular base station communication equipment, specifically including 5G NR radio units and baseband units. This cellular communication equipment, and cellular communication equipment supplied by other providers, are used by, for example, wireless carriers in the United States to build and maintain 5G cellular networks, amongst other things.

**II.    The requested remedial orders would not have any undue adverse effect on public health, safety, or welfare conditions in the United States**

Respondents are one of several global purveyors of cellular base station communication equipment, specifically 5G NR radio units and baseband units, components thereof, and products containing same. Respondents' infringing products offer nothing unique to public health, safety, or welfare conditions that is not otherwise available from alternative suppliers who are not named in the proposed Investigation. Similarly, excluding the accused products would not disturb existing public health and safety systems. Excluding Respondents' infringing products, therefore, will not have any undue adverse effect on U.S. public health, safety, or welfare.

**III.   The requested remedial orders would not have any undue adverse effect on competitive conditions in the United States economy or the production of like or directly competitive articles in the United States**

Third parties make like or directly competitive articles, which could replace the subject articles if they were excluded from the United States. Third parties also have the capacity to replace the volume of articles potentially subject to remedial orders in a commercially

2

reasonable time. For example, Nokia's Airscale product line[2] and Samsung's 5G base station portfolio[3] both include cellular base station communication equipment currently sold in the United States,[4] and which can replace any Ericsson products affected by remedial orders.[5] United States companies, such as Airspan, also provide base station solutions.[6] Those companies also offer capacity to replace the volume of articles potentially subject to the proposed remedial orders in a commercially reasonable time.

Carriers using Respondents' infringing products in the U.S. already diversify their supply chain and could diversify their sourcing further if desired. For example, in addition to

---

[2] *AirScale baseband solutions*, Nokia, https://www.nokia.com/networks/mobile-networks/airscale-radio-access/baseband/ (last visited Dec. 14, 2023) ("Nokia baseband solutions use the latest ReefShark System on Chip technology to provide industry-leading processing power and cell capacity, as well as enabling future-proof network evolution to 5G-Advanced and beyond.").

[3] *Baseband*, Samsung, https://www.samsung.com/global/business/networks/products/radio-access/baseband/ (last visited Dec. 14, 2023) (discussing Samsung's 5G baseband technologies as "designed for massive, complex network deployments as it can coexist with previous products and technologies while supporting various connections without any frequency dependencies").

[4] *See, e.g.,* Bevin Fletcher, *Samsung debuts 5G chipsets to power next-gen network gear,* FierceWireless (June 22, 2021), https://www.fiercewireless.com/5g/samsung-debuts-5g-chipsets-to-power-next-gen-network-gear (discussing Samsung's 5G radio equipment deployed in the U.S.); Juan Pedro Tomás, *US Cellular selects Nokia for 5G SA core network*, RCRWireless (Sept. 10, 2021), https://www.rcrwireless.com/20210910/business/us-cellular-selects-nokia-5g-sa-core-network (discussing U.S. Cellular's use of 5G network infrastructure provided by Nokia and others, including Ericsson); *Nokia selected by Charter Communications, Inc. to support 5G connectivity for Spectrum Mobile$^{TM}$ customers*, Nokia (June 5, 2023), https://www.nokia.com/about-us/news/releases/2023/06/05/nokia-selected-by-charter-communications-inc-to-support-5g-connectivity-for-spectrum-mobiletm-customers/ (reporting that Charter Communications selected Nokia's "comprehensive AirScale equipment portfolio" to support Spectrum Mobile customers).

[5] *See The Unsung Heroes of 5G: Which Companies are Pushing the Tech Forward?*, TechRadar (May 31, 2019), https://www.techradar.com/news/the-unsung-heroes-of-5g; *Huawei Ban Spurs New Competition for Ericsson and Nokia*, EU Reporter (Sept. 21, 2020), https://www.eureporter.co/frontpage/2020/09/21/huawei-ban-spurs-new-competition-for-ericsson-and-nokia/.

[6] *See Products*, AirSpan *https://airspan.com/products/* (last visited Dec. 14, 2023) (describing available 5G solutions).

3

Ericsson, U.S. Cellular also contracts with Samsung and Nokia.[7] Separately, Verizon also contracts with Samsung and previously used Nokia to source base stations communication equipment.[8] The Commission's remedial measures would not remove infringing Ericsson equipment already installed and operating within U.S. networks. Moreover, Ericsson began manufacturing equipment in the United States in 2020,[9] and those products could continue to supply the U.S. market, so long as they are not built with infringing imported components. Thus, the exclusion of Respondents' infringing products would not impact cellular connectivity, let alone the build-out of 5G networks; it would only affect the mix of suppliers of some of the equipment used in such networks.

### IV. The requested remedial orders would not have an undue negative impact on consumers in the United States

If Respondents' infringing products are excluded from the U.S., there will be no interruption in established wireless Internet networks because the proposed remedial orders will have no effect on equipment that is already installed and in use. In addition, as described above, other companies will be able to meet U.S. demand for base stations in a commercially reasonable time if the infringing products are excluded from the U.S. The proposed remedial orders therefore will not have an undue negative impact on U.S. consumers.

### V. Conclusion

Issuing a limited exclusion order and a cease and desist order in this Investigation against Respondents' infringing products will not present any undue adverse effects on the public health, safety, or welfare in the United States, competitive conditions in the United

---

[7] *See* n.4, *supra* (citing RCRWireless article).

[8] *Samsung's Massive Verizon 5G Contract Spells Doom for Nokia*, SDxCentral (Sept. 8, 2020), https://www.sdxcentral.com/articles/news/samsungs-massive-verizon-5g-contract-spells-doom-for-nokia/2020/09/.

[9] *Ericsson USA 5G Smart Factory produces its first base stations*, Ericsson (Mar. 4, 2020), https://www.ericsson.com/en/press-releases/2020/3/ericsson-usa-5g-smart-factory-produces-its-first-base-stations.

4

States economy, the production of like or competitive articles in the United States, and the availability of such products and related services to consumers.

Dated: December 15, 2023    Respectfully submitted:

*/s/ Adam R. Shartzer*
Adam R. Shartzer

*Counsel for Complainant*
*Motorola Mobility, LLC*